**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RONALD DAVID SUTHERLAND,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:12-CV-00206-Y** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| **DEFENDANT.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

*Pro se* plaintiff Ronald David Sutherland ("Sutherland"), proceeding *pro se*, filed this

action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for

judicial review of a final decision of the Commissioner of Social Security denying his claims for

a period of disability and disability insurance benefits under Title II and supplemental security

income ("SSI") under Title XVI of the Social Security Act ("SSA").   In February 2009,

Sutherland applied for disability insurance benefits and SSI alleging that he became disabled on

July 15, 2007.  (Transcript ("Tr.") 18; *see* Tr. 126-32.)  The ALJ held a hearing on October 21,

1

2010 and issued a decision on February 24, 2011 that Sutherland was not disabled. (Tr. 18, 15–62.) Sutherland filed a written request for review, and the Appeals Council denied his request for review on February 7, 2012, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1–5, 8.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "the law and regulation governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 152, 154 (5th Cir. 1999).

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or

2

combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.   20 C.F.R.   §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).   Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), listed in the appendix to the regulations.   20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.   *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*  If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested.   *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*,

3

837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.   ISSUES

In his brief, Sutherland presents the following issues:[1]

1. Whether the ALJ erred in finding that Sutherland did not meet or equal sections 1.04, 11.00 *et seq.*, 12.04, or 12.06 of the Listing;

2. Whether the ALJ's residual functional capacity ("RFC") decision is supported by substantial evidence;

3. Whether the ALJ's hypothetical to the vocational expert ("VE") included all of Sutherland's exertional and nonexertional limitations;

4. Whether the ALJ's decision was arbitrary and capricious pursuant to 5 U.S.C. § 706; and

5. Whether the ALJ ignored new evidence that was submitted to the ALJ after the hearing before the ALJ.

(Plaintiff's Brief ("Pl.'s Br.") at 1-2, 6-24.)

---

[1] The Court has rearranged the order that it will analyze each issue presented by Sutherland to make the analysis easier to understand.

4

## IV.   ALJ DECISION

In his February 24, 2011 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 18-29.) The ALJ noted that Sutherland met the disability insured status requirements under Title II of the SSA through December 31, 2012. (Tr. 20.) He stated that Sutherland had not engaged in any substantial gainful activity since July 15, 2007, the alleged onset date of his disability. (*Id.*) The ALJ further found that Sutherland had the following severe combination of impairments: "degenerative disc disease/degenerative joint disease of lumbar spine; left lower extremity paresthesias; and major depressive disorder, recurrent, severe, without psychotic features." (Tr. 21 (emphasis omitted).)

Next, the ALJ held that none of Sutherland's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 21.) As to Sutherland's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sustained work activity at less than a full range of sedentary work, as defined in 20 CFR 404.1567(c) and 416.967(c), in that the claimant can: only occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; sit for about 20 minutes at a time before standing at his workstation for about 3 minutes; must avoid exposure to temperatures of 80 degrees or more and 65 degrees or less; must avoid exposure to high humidity and wetness; understand, remember, and carry out simple and detailed, but not complex, instructions; and can only have incidental, superficial work-related contact with the general public, co-workers, and supervisors.

(Tr. 22 (emphasis omitted).) The ALJ opined, based on his RFC assessment and other findings, that Sutherland was not able to perform his past relevant work. (Tr. 26.)

5

However, the ALJ found that there were a significant number of jobs in the national economy that Sutherland could perform; thus, he was not disabled. (Tr. 27-28.)

## V.   DISCUSSION

### A.   Step Three: Impairments Meet or Equal Section in Listing

Sutherland argues that the ALJ erred in finding at Step Three that none of his physical or mental impairments met or equaled the requirements of sections 1.04, 11.00 *et seq.*, 12.04 or 12.06 of the Listing. (Pl.'s Br. at 6-18.) To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1. As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); *see generally* SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1526(e), 416.926(e).

Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3. Whether the impairment is equivalent in severity to the requirements of a listed impairment requires a judgment that the medical findings equal a level of severity that prevents a person from doing any gainful activity. *Id.* at *4. Because a finding of equivalence requires familiarity with the regulations and the legal standard for severity, it is also an issue reserved to the Commissioner. *Id.* When determining whether an

6

impairment medically equals a listing, the Commissioner considers all relevant evidence[2] in the record about such impairment, including findings from medical sources.    20 C.F.R. § 404.1526(c).

The claimant has the burden of proving that his impairment or combination of impairments meets or equals a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).   "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original).   An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.*   If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment. *Id.* at 531.   To do so, the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Zebley*, 493 U.S. at 531 (*citing* 20 C.F.R. § 416.926(a)).   The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.   "Although it is not always necessary that an ALJ provide an exhaustive discussion of the evidence, bare conclusions, without any explanation for the results reached, may make meaningful judicial review of the Commissioner's final decision impossible." *Inge ex rel. D.J.I. v. Astrue*, No. 7:09-CV-95-O, 2010 WL 2473835, at *9 (N. D. Tex. May 13, 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

---

[2] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience.  20 C.F.R. § 416.926(c).

In this case, the ALJ specifically found at Step Three that Sutherland's impairments did not meet or equal the required criteria for any of the sections in the Listing.   (Tr. 21-22.) Specifically, the ALJ stated:

> The Administrative Law Judge has reviewed the medical records and compared the signs and symptoms of the claimant's severe impairments to the criteria of impairments found in Appendix I of the Act.   Those Listing(s) considered include but are not limited to Listing 1.04 (musculoskeletal), 11.00 et seq. (neurological) and 12.04 (mental health).   With regard to Listings 1.04 and 11.00 et seq., the Administrative Law Judge finds the claimant does not have findings of nerve root compression, sensory or reflex loss, spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication nor neurological compromise to warrant a conclusion that either impairment meets or equals the criteria of either Listing either singly or in combination.

> With regard to the claimant's major depressive disorder, the Administrative Law Judge finds that while the claimant has the signs and symptoms such as depressed mood, mild insomnia, feelings of guilt and concentration issues, the claimant's depression fails to either meet or equal the Listing for 12.04 due to the lack of evidence supporting the "B" criteria of that Listing.   Records indicate that the claimant has only "moderate" restrictions in performance of activities of daily living; "moderate" limitations of social function; "moderate" limitations of concentration, persistence and pace; and no repeated episodes of decompensation, each of an extended duration.   This was the assessment of the Consultative Examiner and, separately, the non-reviewing DDS State Medical Expert who completed the Psychiatric Review Technique Form to which the undersigned adopts with great evidentiary weight and attaches hereto (Exhibit B11F).

> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.   Without satisfying the Part B criteria, the claimant has failed to meet his burden of proof and the sequential process must proceed to the next step.

(Tr. 21-22.)

To meet the Listing under section 1.04, a claimant must show he has a disorder of the spine, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture, that results in compromise of a nerve root or the spinal cord.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  In addition, a claimant must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

> or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dyesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

> or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effective, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.[3]

In this case, the ALJ stated that Sutherland "does not have findings of nerve root compression, sensory or reflex loss, spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication." (Tr. 21.)  However, Sutherland, in his brief, sets forth all the medical

---

[3] The Court notes that the Commissioner incorrectly states in his response that Sutherland must show that he suffers from **all** conditions in sections 1.04A., B., **and** C. to meet section 1.04 of the Listing. (Defendant's Response ("Def.'s Resp.") at 4-5).  However, a careful reading of section 1.04 shows that Sutherland must show that he meets the conditions listed in section 1.04A., B., **or** C. to meet section 1.04 of the Listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

evidence that he believes shows that he does meet section 1.04 of the Listing. (Pl.'s Br. at 6-12.) The Court, after reviewing the ALJ's decision and the medical evidence referenced by Sutherland, finds that the ALJ's statement that Sutherland "does not have findings of nerve root compression" is not, without explanation, accurate.

In this case, there is MRI and x-ray evidence in the record showing the following: (1) "[p]osterior displacement of the left S1 nerve root" (Tr. 256); (2) "[r]ecurrent left posterolateral disk protrusion displacing the thecal sac posteriorly abutting the left S1 nerve root" (Tr. 263); and (3) "enhancement in the anterior epidural space and along the left S1 nerve root" (Tr. 275; *see* Tr. 277). In addition, treatment notes indicate that there is "some confinement of the [lateral] S1 nerve root." (Tr. 332.) The ALJ, however, provides no explanation for his statement that Sutherland does not have nerve root compression and why the above-listed evidence is not proof of nerve root compression. Consequently, the Court cannot determine what evidence the ALJ is relying on to support such statement, and the Court concludes that the ALJ's conclusion is not supported by substantial evidence.

Even though the ALJ erred at Step Three by failing to provide adequate reasons for his adverse findings that Sutherland did not met section 1.04 of the Listing, remand would be necessary only if the claimant's substantial rights have been affected. *See Hurtado v. Astrue*, No. H-07-3486, 2008 WL 3852361, at *3 (S.D. Tex. Aug. 15, 2008). *See, also, Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d, 726, 728 (5th Cir. 1996) ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen*, 837 F.2d

1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, Sutherland has met his burden as to prejudice. The Court finds that there is some evidence that Sutherland might possibly meet, at the very least, section 1.04A. of the Listing. First, there is evidence that Sutherland has a disorder of the spine covered under section 1.04 of the Listing as he has been diagnosed with, *inter alia*, degenerative disc disease. (*See, e.g.*, Tr. 316-18, 344.) In addition, as noted above, there is evidence of nerve root compression. Furthermore, there is also evidence that Sutherland suffers from neuro-anatomic distribution of pain, as he has described his pain as being constant, sharp in nature, radiating to his left leg. (*See, e.g.*, Tr. 314, 332, 335-36.) Additionally, the medical records indicate that Sutherland has limitation of motion of the spine (*see, e.g.*, Tr. 277, 316, 340 as well as motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[4] (*see*,

---

[4] The Court notes that the Commissioner, citing to 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00E.1., argues in his response that "a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs." (Def.'s Resp. at 5.) The relevant regulation states:

> Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss. However, a report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00E.1. While the Court cannot locate evidence of circumferential measurements of Sutherland's thighs and lower legs, there is evidence that Sutherland's ability to heel and toe walk and squat are limited as a result of his spinal condition and that Sutherland is unable to keep his balance on heel and

*e.g.*, Tr. 277, 315-16, 335-36).  Furthermore, Sutherland has had at least two positive straight-leg

raising tests.  (*See, e.g.*, Tr. 277, 316.)  Because the ALJ's statement that Sutherland does not

suffer from nerve root compression appears incorrect without additional explanation as to the

basis of that conclusion and there is evidence indicating that Sutherland may meet the

requirements of section 1.04 of the Listing, substantial evidence does not support the ALJ's

decision and remand is required as to this issue.[5]  Also, because the Court is remanding the case

for the ALJ to consider whether Sutherland does meet or equal section 1.04 of the Listing, the

Court will not review whether the ALJ erred in finding that Sutherland does not meet or equal

any of the other sections of the Listings as argued by Sutherland.  On remand, the ALJ shall also

carefully review his findings regarding these other sections of the Listing.

### B.  RFC Determination issues

Sutherland also argues that the ALJ's RFC determination is not supported by substantial

evidence.  (Pl.'s Br. at 21-23.)  RFC is what an individual can still do despite his limitations.

SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum

remaining ability to do sustained work activity in an ordinary work setting on a regular and

continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and

continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p,

---

toe walking.  (Tr. 316-17.)  Such evidence appears to meet the requirements of section 1.00E.1. of the regulation even without the circumferential measurements.

[5] The Commissioner argues that much of the evidence Sutherland cites in support of his argument that he meets section 1.04 of the Listing occurred prior to his alleged onset date and, thus, "is not relevant for determining his functioning between his alleged onset date and the date of the ALJ's decision." (Def.'s Resp. at 5, n.3.)  While some of the evidence cited by Sutherland does predate his alleged onset date of July 15, 2007, the majority of such evidence is diagnostic imaging evidence showing that Sutherland has been diagnosed with various disorders of the lumbar spine. (*See*, e.g., Tr. 256-57, 263, 275-76, 351-53.)  There is additional evidence dated after July 15, 2007 that shows that Sutherland's condition has continued to deteriorate. (*See*, e.g., Tr. 314-18, 340.)

1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record.  *Id.* at 3-6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

After reviewing the ALJ's RFC determination as set forth above and the evidence in the record, the Court finds that there is evidence in the record that supports such determination, including the following: (1) October 2009 opinions of Dr. Yadwinder Kang, M.D. (Tr. 314-17), which the ALJ assigned "significant weight" (Tr. 23-24; *see* Tr. 314-17); (2) treatment records dated in 2008 and 2009 from the Helen Farabee Regional MHMR Centers (Tr. 24; *see* Tr. 236-54, 300-13); (3) Sutherland's own testimony (Tr. 25-26); and (4) opinions from the State Agency Medical Consultants ("SAMCs") (Tr. 25; *see* Tr. 281-99, 319).  The ALJ properly discussed the evidence in the record in making his RFC determination, including Sutherland's pain; explained the reasoning for his RFC determination; and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).  Because there is substantial evidence in the record that supports the ALJ's evaluation of Sutherland's impairments as well as his RFC assessment, remand is not required on this basis.

13

The Court notes that Sutherland further claims that the ALJ erred by not "append[ing] a 'standard document outlining the steps of the § 404.1520a procedure' to the decision." (Pl.'s Br. at 21.) The section 404.1520a procedure that Sutherland is referring to is a section in the federal regulations that requires the ALJ to follow mandatory steps when evaluating the severity of mental impairments in claimants. *See* 20 C.F.R. § 404.1520a; *see also* 20 C.F.R. § 416.920a. Such procedure is known as the "special technique." *Id.* Sutherland's assertion, however, is incorrect as Sutherland is referring to a portion of the regulation that applies to the "initial and reconsideration levels of the administrative review process." 20 C.F.R. § 404.1520a(e); *see* 20 C.F.R. § 415.920a(e). At the ALJ level, the regulations require only that the application of the technique be documented in the decision. 20 C.F.R. § 404.1520a(e). In this case, the ALJ complied with his duties under 20 C.F.R. § 404.1520a(e) and set forth in his decision the required information regarding Sutherland's mental impairments in the ALJ's decision. Tr. 21-22, 24-26.)

Sutherland also contends that the "assessment by the State of Texas Disability Determination Service" was incomplete. (Pl.'s Br. at 21.) However, the Court notes that it is not reviewing such assessments and, instead, is only reviewing the ALJ's decision to determine whether the ALJ applied the correct legal standards and whether such decision is supported by substantial evidence in the record as a whole.

In addition, Sutherland argues that the ALJ erred in not factoring his high blood pressure and the fact that it was not controlled by any type of medication into the ALJ's RFC determination. (Pl.'s Br. at 22-23.) However, Sutherland offers no evidence that his high blood

pressure limits his ability to perform basic work activities or causes additional work-related limitations beyond the limitations already set forth in the RFC. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.") *See, e.g., Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations or any further limitations beyond the sedentary work level found by the ALJ.") *See also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected). Consequently, the ALJ did not err and remand is not required on these RFC issues.

### C. Hypothetical Question to the VE

Sutherland also argues that the hypothetical questions posed to the VE were incorrect as they did not include all of Sutherland's exertional and non-exertional limitations. (Pl.'s Br. at 19-20.) The ALJ found at Step Five, based on the VE's testimony, that Sutherland was not disabled because he could perform the jobs of lock assembler, jewelry assembler and semiconductor assembler, all jobs that existed in significant numbers in the national economy. (Tr. 27-28.) A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The hypothetical question posed to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the

15

opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, at the hearing, the ALJ and the VE had, *inter alia*, the following discussion:

[ALJ:] [I]f you would consider a hypothetical individual same age, education and vocational background as the claimant, who could perform the physical exertional requirements of light work[6] as defined by the regulations; who can occasionally climb ramps and stairs, balance and stoop, but never should be climbing ropes, ladders or scaffolds, kneeling, crouching or crawling; who is going to need pretty much a sit/stand option; who is going to have to have a controlled environment as to temperature, so nothing eighty degrees or more or 65 degrees or less, and we can also avoid any kind of exposure to high humidity or wetness. Then from the mental side, that they can understand, remember and carry out simple and detailed, but not complex instructions. I think I'll stop right there. Are there any jobs existing that such a hypothetical individual could perform?

[VE:] Yes. Your honor, the job of electronics assembler . . . . The job of electronics inspector . . . . The job of electronics worker . . . .

[ALJ:] Okay. And if you would add to that, this hypothetical individual could have only incidental or superficial work-related contact with the general public, coworkers and supervisors, would that have any effect on these jobs?

[VE:] I don't believe it would have any significant effect? [sic]

[ALJ:] Okay. If the hypothetical individual, let's say, could not lift and carry more than a maximum of fifteen pounds, would that have effect on these jobs?

---

[6] Pursuant to the regulations, light work is defined as follows:

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b).

[VE:] Well, they're rated at twenty, and if he couldn't do more than fifteen, it would be potentially difficult to do? [sic]

[ALJ:] Okay.

[VE:] I can't say 100 percent, but it would certainly erode the jobs.

[ALJ:] Okay.  So, if we take the totality of the hypothetical with the fifteen pound max, are there any jobs existing that such a hypothetical individual could perform?

[VE:] Not when you add in all the variables.

[ALJ:] Okay.  If we take away the sit/stand option, and just put that they sit for let's say about twenty minutes at a time for standing for three, would that make any difference?

[VE:] Well—

[ALJ:] Because I presume we're looking at sedentary work then.

[VE:] We're pretty much looking for sedentary work.

[ALJ:] Yeah.

. . . .

[ALJ:] But would there be any sedentary semiskilled?

[VE:] Under the job of a lock assembler . . . .   The job of assembler jewelry . . . .  And the last job I would offer is assembler semiconductor . . . .

(Tr. 57-60 (footnote added).)

In the series of hypothetical questions that the ALJ asked the VE, the ALJ properly incorporated into the hypothetical questions all the functional limitations that he **found** in his RFC assessment.  Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" his RFC assessment, the

17

ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).[7]

### D.  Arbitrary and Capricious

Sutherland also claims that the ALJ's decision was arbitrary and capricious because the "decision of the ALJ to deny benefits was based on wholly fabricated and made up evidence, and/or was not based on substantial evidence and was an incorrect application of the law." (Pl.'s Br. at 23.)  Sutherland does not provide any analysis or evidence in support of his claims in this section of his brief.  Consequently, the Court will not consider such claims.

### E.  New and Material Evidence Submitted After the ALJ's Decision

Sutherland also argues that remand is required so that the ALJ can consider the following additional documents that Sutherland submitted to the Court with his brief: (1) a chart showing Sutherland's blood pressure when sitting, pulse when sitting, respiration rate, weight, height, BMI, and temperature on various dates from September 7, 2010 through March 4, 2013; (2) a medical record dated January 25, 2012 showing that Sutherland was taking Naispan, nortriptyline, aspirin, enalapril maleate, hydrochlorothiazide, and ranitidine; (3) a medical record

---

[7] Although the ALJ asked additional questions to the VE which indicated that a person with additional limitations might not be able to perform certain jobs, the ALJ ultimately determined that Sutherland did not suffer from such additional limitations and did not include such limitations in the RFC determination.  Because, as discussed above, such RFC determination is supported by substantial evidence, it was not error for the ALJ to rely on only the testimony of the VE that related to the RFC determination found by the ALJ.

dated February 13, 2011 showing that Sutherland was, *inter alia*, currently taking Norvasc, Vasotec, Lopid, Motrin, Lopressor, Pamelor, Prilosec, and Hydrodiuril; and (4) a medical record dated January 24, 2011 showing that Sutherland was, *inter alia*, currently taking Norvasc, Vasotec, Lopid, motrin, Lopressor, Pamelor, Prilosec, and Hydrodiuril and was being treated for a finger injury. (Pl.'s Br. at 23-24, Exhibits A-D).)

"When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42. U.S.C. § 405(g) and *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of the newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, the evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

In this case, at the very least, there is no evidence that the newly submitted evidence is material. This evidence merely shows the medications that Sutherland was taking at specific

19

times as well as various readings of Sutherland's vital signs and does not provide a reasonable probability that it would change the outcome of the Commissioner's decision.  Consequently, remand is not required on this issue.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

20

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 18, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED September 4, 2013.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

21